Nott, J.,
delivered the opinion of the court:
This is an action brought to recover under the “Abandoned or captured property act” the net proceeds of 13 bales of cotton.
The facts relating to the capture are thus stated by the officer who made the seizure:
“ In the spring of 1864, so far as I recollect, while General Steele was on his way to Camden, Arkansas, and General West was left in command at Little Rock, Arkansas, General Clayton commanding the troops at Pine Bluff, Arkansas, received a telegram from General West ordering all the cotton at the post of Pine Bluff shipped to Little Rock. He, expecting the post of Little Rock to be attacked, required the cotton to protect it. I, at that time, was an officer in the volunteer service, serving upon the staff of General Clayton. The telegram was given to me, and I was directed to look to its execution, *439 which I did. I saw the quartermaster, Hillyer, communicated to him the order, and ordered him to furnish the transportation, and directed a detail of men to be made to report to the quartermaster to load said cotton. I had ordered all the cotton upon the streets to be removed to some secure place, and in this way I became acquainted with some hales of cotton belonging to the claimant, the number of hales not known, which were .not removed on account of the claimant’s absence, but which remained in an open lot near the landing.
“ I was military inspector of the city, and it was my duty to inspect it, and report upon its condition weekly, which I did, and in this way became acquainted with this lot of cotton belonging to the claimant. When the order came to ship all the cotton in the city to Little Eock, for fortification purposes, in pursuance to the order given by myself to the quartermaster, all the cotton we could find in the city was taken possession of and shipped to Little Rock. I did not see this particular lot of cotton shipped, but upon going down immediately afterwards, I found that the cotton of the claimant had been removed, and I have no doubt that it was so shipped. This cotton was under the protection of the United States flag, and all cotton taken from loyal owners at that time was taken with the express understanding that it was only temporarily-taken for the. purpose of defence, and would be returned to them upon identification, and the most of the cotton taken at that time for that purpose was returned subsequently to the owners after the fortifications at Little Eock were no longer necessary.”
When the claimant became informed of this seizure he made efforts to trace and reclaim the property, or as he says, “ on my return to Pine Bluff in May or June I was informed that the cotton was taken by General West’s orders. I called on General Clayton, who was then commanding Pine Bluff, and he referred me to Captain Hilliard, and he gave me a receipt for the 13 bales, which receipt I left with my attorney at Washington city; I went to Little Eock to see General Steele, and he referred me to the quartermaster and General West, stating that General West had the papers; General West told me that the cotton had been turned over to the agent of the Treasury Department at Little Eock; I called on the agent at Little Eock, who informed me the cotton had been forwarded to Memphis to be shipped north: After this, in 1866, I talked with Mr. Lovel, the treasury clerk at Cincinnati, during the war; he informed me the cotton had been received and sold with other cotton.”
It also appears by the returns in the Treasury Department that of the cotton which came from Little Rock, 182 bales were brought from *440 Pine Bluff “ by military authority for fortifications.” This cotton having found its way in shape of net proceeds into the treasury, the fair presumption is that the claimant’s formed a part of it. At any rate the defendants seized his cotton and he used due diligence to trace and recover it back.
There has been some conflicting evidence as to the claimant’s loyalty. One witness says that from the claimant’s conversation it would appear that “ he. was secesh when the corfederates had possession of the country and a Union man when the federáis had possession.” But the same witness states that he was “ in Pine Bluff at the time of the attach on that place by General Marmadulce, and I saw Mr. Peter A. Fen-nerty. with a gun in his hand in a hot place in company with some federal soldiers.” The officer on General Steele’s staff, whose testimony has been already cited, also says that the claimant “ acted with us as guide, conducting scouting parties through the country, and in various other ways showed his loyalty to the United States.” There is, moreover, a certificate of loyalty produced, given in 1864 by Brigadier General Clayton, and it is indorsed by Major General Steele. We have always regarded loyal acts of this character as satisfactory evidence of loyalty, and when accompanied by personal sacrifice and danger they far outweigh mere expressions involuntarily uttered while the speaker was little better than a prisoner within the enemy’s lines.
But with regard to the ownership of the claimant there is more doubt. He was an active operator in cotton and there have been numerous questions to be settled as to which lot of cotton these 13 bales belonged. His own testimony states that five bales were purchased of one man and two of another, but of whom the remaining six were purchased he cannot recollect; nor does he show the facts and circumstances attending the purchase of those six bales. As the court is now constituted there is an equal division as to his right to recover for the whole; but three of us think he has made out a case for the seven bales, and that he may either take judgment therefor or have the case reheard before a full bench.
The judgment of the court therefore is that the claimant recover the net proceeds of seven bales of cotton captured at Pine Bluff, Arkansas, being $24=3 per bale and amounting to $1,468, with leave to apply to vacate the judgment and have the case heard before all the judges. ^